**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Charles Bradford Odom, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER GRANTING DEFENDANTS** |
| vs. | ) | **BRUTGER EQUITIES, INC., AND** |
| | ) | **KATHLEEN BUFORD'S MOTION FOR** |
| Brutger Equities, Inc., c/o Larry Brutger, | ) | **SUMMARY JUDGMENT** |
| Kathleen Buford, Paul Olson, | ) | |
| and Cody Trom, | ) | |
| | ) | Case No. 1:06-cv-038 |
| Defendants. | ) | |

Before the Court is Defendants Brutger Equities, Inc., and Kathleen Buford's Motion for Summary Judgment filed on April 11, 2007. See Docket No. 67. On May 16, 2007, the Plaintiff filed a response in opposition. For the reasons set forth below, the Defendants' motion is granted.

I.      **BACKGROUND**

A.      **PROCEDURAL HISTORY**

The plaintiff, Charles Bradford Odom is an inmate at the Burleigh County Detention Center in Bismarck, North Dakota. On May 10, 2006, Odom filed a pro se complaint asserting that the Defendants had violated his civil rights pursuant to 42 U.S.C. § 1983. Magistrate Judge Charles S. Miller Jr. reviewed Odom's complaint as mandated by the Prisoner Litigation Reform Act, 28 U.S.C. § 1915A(a), and concluded that Odom's claim alleging racial discrimination be allowed to proceed but only as to then named defendant "Ms. Kathleen." See Docket No. 4. The Court instructed Odom to file an amended complaint if the Court had misconstrued the parties whom Odom had intended to sue with respect to his claim of race discrimination.

On July 11, 2006, Odom filed a proposed amended complaint and was allowed to proceed against defendants Detectives Paul Olson and Cody Trom, the Days Inn Hotel in Bismarck, North Dakota, and Kathleen Buford, who was previously identified as "Ms. Kathleen." See Docket No. 17. On October 3, 2007, Odom again sought and was granted leave to file an amended complaint. See Docket Nos. 37 and 38. The defendant Days Inn Hotel was dismissed and Brutger Equities, Inc., c/o Larry Brutger (Brutger Equities), the owner of the Days Inn Hotel in Bismarck, North Dakota, was added as a defendant. See Docket No. 38. Other than naming Brutger Equities as a defendant, Odom has not alleged any actions by Brutger Equities or Larry Brutger.

On March 16, 2007, defendants Paul Olson and Cody Trom filed a motion for summary judgment. See Docket No. 59. On May 7, 2007, the Court granted Paul Olson and Cody Trom's motion and dismissed them as defendants. On April 11, 2007, the two remaining defendants, Kathleen Buford and Brutger Equities, filed a motion for summary judgment.

**B.    ODOM'S CLAIM**

Odom has alleged a single cognizable claim of racial discrimination brought pursuant to 42 U.S.C. § 1983. Odom contends that "Detective Paul Olson and Cody Trom and Kathleen Bufford (sic) through some racially motivated alliance did conspire (bringing rise to Conspiracy) to Practice Racial Discrimination." See Docket No. 39. Odom contends that, through her actions on and around December 4, 2005, Buford has violated several provisions of the North Dakota Century Code including Section 12.1-06-04 (criminal conspiracy) and Section 12.1-14-01 (official oppression).[1] Id. Odom contends that "Kathleen Bufords (sic) actions initiated this web of deceit and confusion

---

[1]The Court has construed Odom's references to various state statutes to be support for Odom's racial discrimination claim rather than pleadings of separate causes of action. See Docket No. 38.

with full knowledge of the fact she was involved in Racist activity by her own words." <u>See</u> Docket No. 39, p. 6.  Odom also contends that Olson "informed the hotel Manager that all black males particularly that all large black males are to be viewed as dangerous as well as involved in criminal enterprize (sic)." <u>Id.</u> at 8.  Finally, Odom alleges that one or both of Olson and Trom instructed Buford "to make a decision based solely on the color of [Odom's] skin and the clothing [he] had on and the fact testified (sic) in open court that I paid cash for my room." <u>Id.</u> at 10.

Kathleen Buford was the general manager of the Days Inn Hotel in Bismarck, North Dakota, from May of 2004 until January of 2007.  <u>See</u> Docket No. 65, p. 2.  Because hotels are typically busy with many people coming and going, drug dealers sometimes use hotels as a base to sell drugs.  <u>See</u> Docket No. 63, p. 2.  Prior to December 4, 2005, as part of an effort to prevent crime on the hotel property, Buford requested that Bismarck Police detectives Olson and Trom present an informational forum for employees of the Days Inn Hotel to educate the employees on how to identify drug-related activities.  Detectives Olson and Trom informed the hotel employees that certain behaviors are considered suspicious and consistent with drug-related activity.  These behaviors include giving a false name or address, paying for a hotel room with cash, or having a local address.  <u>See</u> Docket Nos. 63, p.2, and 65, p. 2.  The detectives instructed hotel employees to notify the Bismarck Police Department if the employees found illegal drugs at the hotel or if they identified any individual as meeting a drug profile on the basis of his or her behavior.

On December 4, 2005, Odom checked into the Days Inn at 12:36 p.m.  <u>See</u> Docket Nos. 65 and 65-3.[2]  The Days Inn computer records indicated that Odom had stayed at the hotel on several previous occasions, and that on one occasion on January 3, 2004, Odom had provided an address

---

[2] Due to a clerical error by a Days Inn employee, Odom's last name is misspelled in the computer records as "Odem."  <u>See</u> Docket No. 65, ¶ 9.

in Bismarck, North Dakota.  <u>See</u> Docket No. 65, pp. 3-4.  Upon being asked for an address, Odom provided Buford with a Kansas address.  Buford contends that Odom then asked for a suite and specifically requested suite number 157 - a  room next to the "B" entry door located on the opposite side of the building away from the front desk.  That room was not available so Buford put him in the suite next to it.  Odom stated that he would pay cash for the room and provided a Kansas identification card.  Odom then pulled out a large "wad" or roll of bills and paid for the room.  <u>Id.</u> at 4. Odom contends that "Ms. Buford never said anything was wrong with me paying cash and it's not against the law for me to use cash anywhere in America.  Point of fact poor people aren't issued credit cards."  <u>See</u> Docket No. 73.  Buford does not contend that it was against the law for Odom to pay with cash.  Buford stated that she thought it was unusual that a guest would carry such large amounts of cash, and that he would display the cash so openly.  <u>See</u> Docket No. 65, p. 4.  Odom asked where he could purchase luggage and stated that he needed to repack his things.  Burford also found this question to be unusual.  Buford noted that Odom was extremely talkative during the process of checking in and offered a lot of information about himself.  Buford found it unusual that Odom offered so much information about himself because guests generally do not offer much information when they check in.  The Days Inn also requires vehicle information from its guests, and Odom indicated that he was driving a Cadillac with Kansas license plates.  However, when Odom left the lobby he got into a white Pontiac or GMC car with North Dakota license plates which was driven by someone else.   <u>Id.</u> at 4-5.  Buford found this to be unusual as well.

Buford stated that "[w]hile each of Odom's individual behaviors was merely unusual, the sum of Odom's unusual behaviors caused me to be suspicious of him."  <u>Id.</u> at 5.  Based on her observations, specifically that Odom requested a specific suite number, had conflicting address and

vehicle information, and displayed a large roll of cash, Buford believed that Odom could meet the profile indicating illegal drug activity.  Id.

After Odom exited the hotel, Buford called Detective Trom to see if Odom might be a person of interest or whether she should be concerned about him staying at the Days Inn.  Buford told Trom that a man identifying himself as Charles Odom had checked into the Days Inn, but did not give a physical description or inform Trom of Odom's race.  See Docket No. 64, p. 3.  Buford informed Trom of Odom's activity while Odom was checking in and Trom considered the reported behavior to be suspicious and consistent with a profile of individuals who may be involved in illegal drug activity.  Id.

Trom recognized the name Charles Odom as an African American individual who had been investigated in the past by the Bismarck Police Department for drug related crimes and as having an outstanding Burleigh County arrest warrant issued as a result of that investigation.  Because Trom was on National Guard duty and unavailable to make the arrest, Trom called Detective Olson and relayed the information about Odom so that Olson could make the arrest pursuant to the arrest warrant.  Id. at 4.  Olson then called Buford and asker her about Odom.  Buford again relayed the actions by Odom that she found suspicious.  See Docket No. 63, p. 3.  Olson stated that he then asked Buford for a physical description of Odom to ensure the arrest of the correct person.  Id. at 4.  Buford stated that Odom was wearing white pants, a very bright yellow hat, and he was an extremely large black male.  Id.  Buford also informed Olson that Odom used the "B" exit door of the hotel.

Olson then called the police dispatch in Bismarck and received confirmation that Odom had an outstanding arrest warrant for felony drug crimes.  Id.  Olson then conducted surveillance of the

hotel and the "B" exit door and called Lieutenant Robert Haas (Haas) for back up. Olson then observed Odom exit door B wearing white pants and a bright yellow hat. After Officer Haas arrived, Odom was observed returning to the hotel. Olson and Haas then arrested Odom in the parking lot and informed him that he was under arrest pursuant to a felony arrest warrant.

Olson and Trom both attest that they have never advised anyone that a person's race is a factor in a drug profile or that African American individuals should be considered dangerous or likely to be engaged in illegal activity. See Docket No. 63, p. 5, and Docket No. 64, p. 4. Detectives Olson and Trom further attest that they have never told anyone to contact the police if African Americans check into a hotel. Id. Finally, Buford attests that she contacted Trom solely on the basis of Odom's statements and actions which she found to be unusual and suspicious and not because of Odom's race. See Docket No. 65, p. 6.

## II.     STANDARD OF REVIEW

It is well-established that summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Clark v. Kellogg Co., 205 F.3d 1079, 1082 (8th Cir. 2000). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.  Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact.  If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings.  Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial.  Fed.R.Civ.P. 56(e); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).  A mere trace of evidence supporting the non-movant's position is insufficient.  A non-movant must present more than a scintilla of evidence and must present specific facts to create a genuine issue of material fact for trial.  F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir.1997). The facts must generate evidence from which a jury could reasonably find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.   **LEGAL DISCUSSION**

Odom's complaint sets forth a single claim under 42 U.S.C. § 1983 for racial discrimination in violation of his constitutional rights.  The defendants Buford and Brutger Equities provide several arguments for dismissal including that Odom has failed to establish that the defendants are state actors or that he was unlawfully deprived of any right secured by federal law.

It is well-settled that "in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." DuBose v. Kelly, 187 F.3d 999, 1002 (8th Cir. 1999).

As a result of the "under color of state law" requirement, Section 1983 generally is restricted to state action and rarely provides a cause of action against a private individual.  Destek Group, Inc. v. N.H. Pub. Utils. Comm'n, 318 F.3d 32, 39-40 (1st Cir. 2003).  The "purpose of Section 1983 is to deter state actors from using the badge of their authority to deprive individuals of federally guaranteed rights."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).  As a result, private parties are only liable under Section 1983 when they have been jointly engaged with public officers in the denial of civil rights.  Young v. Harrison, 284 F.3d 863, 870 (8th Cir. 2002).  "It is universally recognized, however, that the mere furnishing of information to police officers does not constitute joint action under color of State law which renders a private citizen liable under Section 1983."  Occhino v. Lannon, 150 F.R.D. 613, 623 (D. Minn. 1993) (citations omitted).  However, a Section 1983 plaintiff may show that a private party's actions amounted to state action if he can prove a conspiracy existed between a state actor and the private party.  Askew v. Millard, 191 F.3d 953, 957 (8th Cir. 1999).

A conspiracy is not presumed from the mere fact that it is alleged.  Allegations must at least include that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding" and provide some facts suggesting a meeting of the minds.  Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983).  "[I]n a conspiracy case, 'a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'"  Ivy v. Kimbrough, 115 F.3d 550, 552 (8th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

In this case, Odom's allegations of a conspiracy are conclusory in nature and unsupported by any facts.  Odom contends that either Olson or Trom instructed Buford that all black males are to be viewed as dangerous.  Odom contends that "[a]pparently [Detective Olson has] informed the

hotel manager that all black males particularly all large black males are to be viewed as dangerous as well as involved in criminal enterprize (sic)." <u>See</u> Docket No. 39, p. 8.  Odom also contends that Buford "was in a direct reflection (sic) of under the color of law or its direction to take and I quote make a decision based solely on the color of my skin and the clothing I had on and the fact testified (sic) in open court that I paid with cash for my room." <u>Id.</u> at 10.  Odom, in referring to Trom and Olson, also contends that [o]ne of the two or both of them instructed [Buford] in these tactics." <u>Id.</u> However, none of these allegations or contentions are supported by any facts.

Odom relies on mere speculation to support his allegation that some arrangement or conspiracy existed between Detectives Trom and Olson.  The only fact which arguably supports an inference of a conspiracy is that Olson and Trom had previously presented a seminar to Days Inn employees to inform them of various types of suspicious actions that may indicate drug-related activity.  However, there are no facts or inferences to be drawn from any facts to suggest that Detectives Trom or Olson instructed the employees that an individual's race is a factor that may indicate illegal activity.  The detectives indicated that suspicious activity includes giving a false name or address, paying for a hotel room with cash, or having a local address; all actions that were performed by Odom when he checked in.  Odom does not dispute that he engaged in the behaviors that Buford found to be suspicious, specifically, that he paid in cash, asked for a room near the exit door at the rear of the hotel, provided a Kansas address and license plate number, and left in a vehicle with North Dakota license plates.  <u>See</u> Docket No. 73.  Instead, Odom simply contends that those behaviors were not suspicious although common sense indicates otherwise.

It is clear that Buford merely reported suspicious conduct to the police.  Buford initially informed Detective Trom of Odom's name and his actions that she found to be suspicious.  Trom

9

recognized Odom's name from past drug investigations and knew of an outstanding warrant for his arrest.  Trom then contacted Olson, who also recognized Odom's name.  The only reference to Odom's race came when Detective Olson called Buford back and asked her for a physical description of Odom so that he could ensure the arrest of the correct person.  It is well-established that an unadorned physical description of a person that includes a person's race does not evidence a discriminatory intent.  Jones v. Union Pacific R. Co., 302 F.3d 735, 743 (7th Cir. 2002).

The Court finds that there is no credible evidence that Kathleen Buford or Brutger Equities were jointly engaged with a state actor or were acting in conspiracy with state actors.  The Court finds that Odom has failed to create a genuine issue of material fact that the conduct complained of was committed under color of state law.  Because the Court finds that Odom has failed to establish a genuine issue of material fact as to the state actor element, the Court need not address whether the plaintiff has been deprived of a federal right.[3]

IV.   **CONCLUSION**

The Court has carefully and thoroughly reviewed the entire record.  There has been no competent, reliable factual evidence presented to support the claims of constitutional violations. There are no genuine issues of material fact for trial and, as such, the Defendants are entitled to summary judgment as a matter of law.  The Defendant's amended Motion for Summary Judgment (Docket No. 67) is **GRANTED**.  The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED**.

Dated this 1st day of June, 2007.

---

[3]  It is questionable whether Odom has been deprived of any federal statutory or constitutional right because the arrest in this case was made pursuant to a facially valid North Dakota arrest warrant.

_/s/ Daniel L. Hovland_
Daniel L. Hovland, Chief Judge
United States District Court

11